UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| SOPHIA PHEAP, as Administratrix and Personal Representative of the Estate of CHANNARA PHEAP, | )<br>)<br>) |
| Plaintiff, | )  3:20-CV-00387-DCLC-DCP<br>)<br>) |
| v. | )<br>) |
| CITY OF KNOXVILLE, et al., | )<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

In 2019, Knoxville Police Department ("KPD") Officer Dylan M. Williams ("Officer Williams") fatally shot Channara Tom "Philly" Pheap ("Pheap") at an apartment complex in Knoxville, Tennessee, where he was investigating a hit and run. Sophia Pheap ("Plaintiff"), the administratrix and personal representative of Pheap's estate, brought this action pursuant to 42 U.S.C. § 1983 against Officer Williams, the City of Knoxville ("the City"), former KPD Chief of Police Eve M. Thomas ("Chief Thomas"), and Jane Does 1–5 [Doc. 1]. Officer Williams, the City, and Chief Thomas now move for summary judgment on various claims asserted by Plaintiff in her Amended Complaint [Docs. 98, 101]. For the reasons stated herein, Chief Thomas and the City's motion [Doc. 98] is **GRANTED** and Officer Williams's motion [Doc. 101] is **GRANTED IN PART AND DENIED IN PART**.

I.    BACKGROUND

On the afternoon of August 26, 2019, Officer Williams received information from dispatch regarding a hit-and-run collision that had just occurred within his district [Doc. 119, ¶ 1]. Dispatch

1

described the suspect vehicle as a gold sedan and, after running the license plate number, Officer Williams determined that the make of the vehicle was Dodge and the registered owner, Chelsea Beverwyck, lived at Clear Springs Apartments (formerly known as "Tillery Ridge Apartments") [*Id*. at ¶¶ 2–5; Doc. 120, ¶ 10]. Officer Williams proceeded to Clear Springs Apartments and, as he pulled into the parking lot at approximately 5:30 p.m., he observed a gold Dodge sedan parked in the lot with a license plate number matching that of the suspect vehicle [Doc. 119, ¶¶ 6–8].

Officer Williams parked his patrol cruiser at an angle directly behind the gold sedan [*Id*. at ¶ 9]. Noticing that no one was in the vehicle, Officer Williams approached a ground level apartment unit and asked the individuals inside if they knew who drove the gold sedan [*Id*. at ¶¶ 12, 14]. A woman, later identified as April Barnard, came out onto the porch to speak with Officer Williams [*Id*. at ¶ 14]. Ms. Barnard indicated that the driver lived on the third floor and directed Officer Williams around the corner to the back of the building to access the stairs [*Id*. at ¶ 15]. Officer Williams proceeded around the corner of the building and out of view of his dash camera [*Id*. at ¶ 16; Doc. 34-6, 17:35:38].

As Officer Williams approached the stairs, he observed Pheap coming down the stairway and greeted him [Doc. 119, ¶ 17]. When Pheap reached the bottom of the steps, Officer Williams asked him if he drove a car in the parking lot, to which Pheap responded, "no" [*Id*. at ¶¶ 18, 19; Doc. 120, ¶¶ 21, 24]. Officer Williams testified that Pheap was fidgeting, acting nervous, and repeatedly attempting to reach his hands into his pockets [Doc. 119, ¶¶ 22, 23]. He also testified that he saw an item in Pheap's pocket and he ignored multiple verbal commands to keep his hands out of his pockets [*Id*. at ¶¶ 26, 27]. When Officer Williams asked what he had in his pocket, Pheap stated that it was his wallet [Doc. 120, ¶ 26]. Officer Williams further testified that Pheap could not maintain eye contact as he scanned his surroundings, which he interpreted as an effort

2

to look for an imminent path of escape [Doc. 119, ¶¶ 24, 25]. Shortly after encountering Pheap, Officer Williams requested a description of the driver over his radio [*Id*. at ¶ 28]. In response, he received a physical description of the driver as "light to medium skin, black or Hispanic male," which he observed to be consistent with Pheap's appearance [*Id*. at ¶¶ 29, 30].

Due to the consistency of Pheap's physical appearance with the description of the driver and his demeanor, Officer Williams asked Pheap if he could check his pockets to determine what he had in them [*Id*. at ¶ 32]. Officer Williams asked Pheap to turn around and keep his hands up [*Id*. at ¶¶ 33, 34]. Although Pheap initially complied, he suddenly lunged away [*Id*. at ¶¶ 34, 35]. Officer Williams attempted to stop him by wrapping his arms around his waist and using a "leg sweep" to take him to the ground [*Id*. at ¶ 35; Doc. 120, ¶ 60]. A struggle ensued and, seconds later, Officer Williams fatally shot Pheap in the parking lot [Doc. 119, ¶ 36; Doc. 120, ¶ 61].

Following the fatal shooting, Plaintiff initiated this action in her representative capacity asserting claims under 42 U.S.C. § 1983 against Officer Williams for excessive force and municipal liability against the City and Chief Thomas for failure to train their officers [Doc. 1]. Plaintiff also alleged state law claims for wrongful death, battery, and negligence [*Id*.]. Officer Williams moved for summary judgment, arguing he was entitled to qualified immunity on the excessive force claim and that, as a result, the state law claims against him also failed as a matter of law [Docs. 34, 40]. The Court denied the motion due to the existence of genuine disputes of material fact [Doc. 77] and the Sixth Circuit dismissed the successive interlocutory appeal for lack of jurisdiction [Doc. 82]. Thereafter, Plaintiff filed an Amended Complaint [Doc. 85], adding another claim under 42 U.S.C. § 1983 against Officer Williams for unlawful seizure [*Id*. at ¶¶ 143–56]. The City and Chief Thomas now seek summary judgment [Doc. 98] and Officer Williams moves for partial summary judgment [Doc. 101].

3

## II. LEGAL STANDARD

Summary judgment is proper where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed.R.Civ.P. 56(c)). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (citation omitted). A mere "scintilla of evidence" is not enough; the Court must determine whether, viewing the record in the light most favorable to the nonmoving party, a fair-minded jury could return a verdict in favor of the nonmoving party. *Id*. at 251–52; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

The City and Chief Thomas assert they are entitled to judgment as a matter of law on each of Plaintiff's claims [Doc. 98]. In response, Plaintiff expressly abandons all claims against Chief Thomas and her negligence claim against the City [Doc. 115, pg. 3, n.1], leaving only the § 1983 municipal liability and wrongful death claims remaining against the City. As for Officer Williams, he asserts he is entitled to qualified immunity on Plaintiff's unlawful seizure claim and judgment as a matter of law on the state law claims for wrongful death and negligence [Doc. 101]. Each claim is examined in turn, beginning with those brought under § 1983.

### A. Section 1983

42 U.S.C. § 1983 provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). To succeed under § 1983, a plaintiff must show

"(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Plaintiff alleges Officer Williams and the City[1] deprived Pheap of his rights under the Fourth and Fourteenth Amendments to the United States Constitution. In particular, Plaintiff asserts that Officer Williams used excessive force and unlawfully seized Pheap [Doc. 85, ¶¶ 122–56]. Plaintiff also alleges the City is liable for the use of excessive force due to its failure to train and supervise KPD officers [*Id.* at ¶¶ 157–78]. For the reasons that follow, Officer Williams is entitled to summary judgment on Plaintiff's unlawful seizure claim and the City is entitled to summary judgment on the claim of municipal liability.

1. **Unlawful Seizure**

Officer Williams asserts the defense of qualified immunity on Plaintiff's unlawful seizure claim [Doc. 102, pg. 7]. "Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights." *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608 (6th Cir. 2015). Once raised, a plaintiff may overcome the defense of qualified immunity only by showing that (1) viewing the facts in the light most favorable to the plaintiff, the defendant's actions violated a constitutional right and (2) such right "was 'clearly established' at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court, in its discretion, may decide which of the two prongs to address first, taking into account "the circumstances of the particular case at hand." *Pearson*, 555 U.S. at 236.

---

[1] Both Officer Williams and the City are "persons" acting under the color of state law. *Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020) (the Supreme "Court has long interpreted [§ 1983] to permit suits against officials in their individual capacities."); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) ("[M]unicipalities and other local government units" are "among those persons to whom § 1983 applies.").

5

Considering the facts of the instant matter, the Court finds it appropriate to first address whether, viewing the facts in the light most favorable to Plaintiff, Officer Williams violated Pheap's constitutional rights. To that end, although Plaintiff alleges a violation of both the Fourth and Fourteenth Amendments, Plaintiff's claim of unlawful seizure is properly analyzed under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

The Fourth Amendment protects against "unreasonable searches and seizures[.]" U.S. Const. amend. IV. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Yet, "[n]ot every police/citizen encounter constitutes a seizure." *United States v. Richardson*, 949 F.2d 851, 855 (6th Cir. 1991). The Sixth Circuit has identified "three distinct types of contact that occur between police officers and the travelling public[,]" only two of which constitute seizures under the Fourth Amendment. *United States v. Flowers*, 909 F.2d 145, 147 (6th Cir. 1990). First, an officer may initiate contact "without any articulable reason whatsoever." *Id*. This includes "merely approaching an individual on the street or in another public place" and "asking him if he is willing to answer some questions" or "putting questions to him if [he] is willing to listen[.]" *Id*. (quoting *Florida v. Royer*, 460 U.S. 491, 497 (1983)). Such an encounter is not "a seizure requiring some level of objective justification." *Flowers*, 909 F.2d at 147 (quoting *Royer*, 460 U.S. at 497).

6

The second type of contact is "the classic *Terry* stop." *Flowers*, 909 F.2d at 147 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). Sometimes referred to as an investigatory detention, "an officer may stop an individual reasonably suspected of criminal activity, question the person briefly, and 'conduct a carefully limited search of the outer clothing . . . in an attempt to discover weapons[.]'" *Richardson*, 949 F.2d at 856 (quoting *Terry*, 392 U.S. at 30). This type of contact requires reasonable suspicion—*i.e.*, "a particularized and objective basis for suspecting the particular person of criminal activity based on specific and articulable facts[.]" *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (citation omitted). The final, and arguably the most intrusive, type of contact is an arrest or prolonged detention, which requires "probable cause to believe a crime has been committed and that the person stopped committed it." *Flowers*, 909 F.2d at 147.

Here, Plaintiff classifies the entire interaction between Officer Williams and Pheap at the bottom of the stairway before the struggle and subsequent shooting as an "investigative stop" and asserts that Officer Williams neither had reasonable suspicion nor probable cause to seize Pheap [Doc. 118, pg. 13]. However, a seizure did not occur until Officer Williams asked Pheap if he could search his pockets. The initial encounter as Officer Williams greeted Pheap, who was descending the stairs from the third floor of the apartment building, and asked questions such as whether Pheap drove a car in the parking lot, whether he lived in a third-floor apartment, and whether he had keys in his pocket is equivalent to "merely approaching an individual on the street or in another public place" and "asking him if he is willing to answer some questions" or "putting questions to him if [he] is willing to listen[.]" *Flowers*, 909 F.2d at 147 (citation omitted); *see Mendenhall*, 446 U.S. at 555 ("The respondent was not seized simply by reason of the fact that the agents approached her, asked her if she would show them her ticket and identification, and posed to her a few questions. Nor was it enough to establish a seizure that the person asking the questions

was a law enforcement official."). No "level of objective justification" is required for such an encounter because it does not constitute a seizure under the Fourth Amendment. *Id*. Accordingly, the initial interaction does not constitute an unlawful seizure, because it was not a seizure at all.

The encounter, however, transformed into a *Terry* stop when Officer Williams asked Pheap if he could search his pockets and instructed him to turn around and keep his hands up. Such an investigatory stop is constitutionally sound so long as Officer Williams had reasonable suspicion— "a particularized and objective basis for suspecting [Pheap] of criminal activity based on specific and articulable facts[.]" *Dorsey*, 517 F.3d at 395. A determination of whether reasonable suspicion existed requires examination of "the 'totality of the circumstances[.]'" *Smoak v. Hall*, 460 F.3d 768, 779 (6th Cir. 2006) (citation omitted). Considering the totality of the circumstances, Officer Williams had reasonable suspicion to suspect Pheap of criminal activity.

At the point at which Officer Williams seized Pheap, he knew that Pheap had just come down the stairs from the third floor where the driver of the suspect vehicle allegedly lived, he matched the description of the suspect driver, he exhibited nervous behavior, and he ignored multiple commands to keep his hands out of his pockets. Each of the foregoing circumstances, taken together, support a finding of reasonable suspicion to investigate Pheap's involvement in criminal activity and to frisk him to determine the presence of weapons. Accordingly, Officer Williams did not violate Pheap's Fourth Amendment rights by conducting a *Terry* stop and attempting to frisk him. Due to the absence of a constitutional violation, Officer Williams is entitled to qualified immunity and summary judgment on Plaintiff's claim for unlawful seizure.

### 2. Municipal Liability

The City is also entitled to summary judgment on Plaintiff's claim of municipal liability under § 1983. "[A] municipality cannot be held liable under § 1983 on a *respondeat superior*

theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, liability under § 1983 attaches "only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Liability must be based upon "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id*. Here, Plaintiff alleges the City's policies or customs caused the alleged deprivation of Pheap's Fourth Amendment rights resulting from Officer Williams's use of excessive force.

"There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff may rely on "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id*. Plaintiff purports to proceed under the third and fourth policy-establishing avenues [Doc. 115, pg. 14]. That is, she alleges that (1) the City had a policy of inadequate use-of-force training and (2) KPD ratified Officer Williams's use of deadly force [*Id*.]. Both avenues are examined in turn.

*Inadequate Training*

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. "Deliberate indifference 'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 737 (6th Cir. 2015) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "A pattern of similar

constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bryan Cnty.*, 520 U.S. at 409).

Here, Plaintiff concedes that there is no such pattern of similar constitutional violations but attempts to establish the City's deliberate indifference under a "single violation theory" [Doc. 115, pg. 15]. To succeed under a single violation theory, however, Plaintiff must demonstrate that the City "failed to train its employees to handle recurring situations presenting an obvious potential for such a violation," *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 563 (6th Cir. 2011), which requires a showing of "a complete failure to train the police force, or training that is so reckless or grossly negligent that future police misconduct is almost inevitable . . . or would be properly characterized as substantially certain to result[.]" *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982) (internal citations omitted).

Plaintiff does not attempt to argue that there is a complete lack of training, recognizing that KPD officers must complete a 22-week basic training academy, an additional 20-week field training program, and annual in-service training [Doc. 115, pg. 18]. Rather, Plaintiff avers that such "training and policies were inadequate in light of the tasks officers were expected to perform" [*Id*. at pg. 19]. However, Plaintiff bases the alleged training deficiencies solely on the actions of Officer Williams on August 26, 2019. "Allegations that a particular officer was improperly trained are insufficient to prove liability, as are claims that a particular injury could have been avoided with better training." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998). Plaintiff has failed to present any evidence that KPD's training is "so reckless or grossly negligence that future police misconduct is almost inevitable" or "substantially certain to result." *Hays*, 668 F.2d at 874. Accordingly, the City is not liable under a failure-to-train theory.

*Ratification*

As an additional basis for establishing municipal liability, Plaintiff cites the Internal Affairs Unit ("IAU") report as one-sided and asserts that KPD officials, including Chief Thomas, "explicitly ratified the actions of [Officer] Williams after an investigation that was incomplete, deficient, and conducted in a manner that helped exonerate [Officer] Williams and ratified his behavior" [Doc. 115, pg. 24]. The Sixth Circuit, however, recently "clarified the scope of this 'ratification' theory[,]" holding that "'a claim based on inadequate investigation' requires 'not only an inadequate investigation in this instance,' but also 'a clear and persistent pattern of violations' in earlier instances." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 495 (6th Cir. 2020) (quoting *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017)). In so holding, the Sixth Circuit reasoned:

> [T]here must be a link between the local entity's failure to investigate and the plaintiff's injury. And an entity's failure to investigate the plaintiff's specific claim will, by definition, come *after* the employee's action that caused the injury about which the plaintiff complains. Because the injury will have already occurred by the time of the specific investigation, there can be no causation from that single failure to investigate. . . . A series of investigative failures before the plaintiff's injury, by contrast, might at least suggest that the local entity's custom led to the employee's harmful action in the plaintiff's own case.

*Pineda*, 977 F.3d at 495 (internal citations and quotations omitted) (emphasis in original).

Here, Plaintiff focuses solely on the alleged "holes and inconsistencies" in the investigation into Officer Williams's use of force against Pheap and the IAU's ultimate conclusion, based on that investigation, that the use of deadly force was "lawful and proper" [Doc. 115, pgs. 23–25]. Nonetheless, she has failed to present any evidence of a causal link between the alleged inadequate investigation and Pheap's constitutional injuries. Thus, even accepting as true Plaintiff's allegations that the investigation was deficient, she has failed to establish "a clear and persistent pattern of violations in earlier instances." *Pineda*, 977 F.3d at 495 (citation omitted). Such failure

is fatal to her claim under a ratification theory.  Considering Plaintiff has failed to demonstrate a municipal policy or custom that caused the alleged constitutional deprivation, the City is entitled to summary judgment on Plaintiff's § 1983 claim.

### B. State Law Claims

Turning to Plaintiff's state law claims, Officer Williams moves for summary judgment on Plaintiff's claims for wrongful death and negligence [Doc. 102, pgs. 13, 14].  Similarly, the City seeks summary judgment on Plaintiff's wrongful death claim [Doc. 100, pg. 22].  The parties' arguments regarding both claims are examined in turn.

#### 1. Wrongful Death

Both the City and Officer Williams contend that Tennessee's wrongful death statute, Tenn. Code Ann. § 20-5-106, does not create a new cause of action and, as a result, they are entitled to judgment as a matter of law on Plaintiff's wrongful death claim [Doc. 100, pg. 22; Doc. 102, pg. 13].  Plaintiff recognizes that the wrongful death statute does not create a new cause of action[2] but asserts that she included the claim to preserve the rights of Pheap's statutory beneficiary, a minor [Doc. 115, pg. 26; Doc. 118, pg. 25].  As the Court previously held, Pheap's right of action passed to his minor daughter, B.P., as his sole beneficiary under Tennessee's wrongful death statute [Doc. 25, pg. 2]; *see* Tenn. Code Ann. § 20-5-106(a).  Plaintiff brought this action in her representative capacity for the benefit of B.P., and she has a legal duty in that capacity "to hold any damages recovered as a trustee for B.P. and must account her for the proceeds of any judgment rendered in this matter" [Doc. 25, pg. 4].  Thus, there is no need to assert a separate claim for wrongful death to preserve B.P.'s rights, and the claim is properly dismissed.

---

[2] *Lynn v. City of Jackson*, 63 S.W.3d 332, 336 (Tenn. 2001) ("Tennessee's wrongful death statute does not create a new cause of action for the beneficiaries but instead preserves the right of action of the decedent.").

12

### 2. Negligence (OW)

As for the negligence claim, Officer Williams asserts he is immune from suit for claims arising out of negligence under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. § 29-20-101, *et seq*. [Doc. 102, pg. 14]. The TGTLA provides government employees with immunity, but only in those situations where the government does not retain immunity. *Colson v. City of Alcoa*, 458 F. Supp. 3d 887, 936 (E.D. Tenn. 2020). Put simply, "the TGTLA does not provide governmental entities and employees with simultaneous immunity." *Id*. Thus, if the City retains immunity under the TGTLA, Officer Williams is *not* immune.

Under the TGTLA, governmental entities have immunity "from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a). The TGTLA subsequently removes such immunity for an "injury proximately caused by a negligent act or omission of any employee within the scope of his employment," but provides a list of exceptions to this removal of immunity. Tenn. Code Ann. § 29-20-205. The second exception provides that immunity is *not* removed "if the injury arises out of…civil rights." *Id*. (emphasis added). This "'civil rights' exception has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitution." *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010).

A claim of negligence falls within the civil rights exception when it "arises out of the same circumstances giving rise to [the] civil rights claim under § 1983." *Id*. Here, Plaintiff's negligence claim arises out of the same conduct underlying her Section 1983 claims and, as a result, falls within the civil rights exception of the TGTLA. Therefore, the City retains its immunity and Officer Williams is not immune.

13

## IV. CONCLUSION

Accordingly, for the reasons stated above, the City's Motion for Summary Judgment [Doc. 98] is **GRANTED**, and Officer Williams's Motion for Summary Judgment [Doc. 101] is **GRANTED IN PART AND DENIED IN PART**. It is hereby **ORDERED**:

1. All claims against the City and Chief Thomas are **DISMISSED WITH PREJUDICE**;

2. Plaintiff's § 1983 claim for unlawful seizure against Officer Williams is **DISMISSED WITH PREJUDICE**;

3. Plaintiff's claim for wrongful death is **DISMISSED WITH PREJUDICE**; and

4. Defendants' Joint Motion to Bifurcate Trial of Officer Williams and the City [Doc. 126] is **DENIED AS MOOT**.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge