UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| SOPHIA PHEAP, as Administratrix and Personal Representative of the Estate of CHANNARA PHEAP, <br><br> Plaintiff, <br><br> v. <br><br> DYLAN M. WILLIAMS, <br><br> Defendant. | 3:20-CV-00387-DCLC-DCP |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for a New Trial [Doc. 220]. The motion is fully briefed and ripe for resolution. For the reasons stated herein, Plaintiff's motion is **DENIED**.

**I.  BACKGROUND**

Following the deadly shooting of Channara Pheap ("decedent" or "Mr. Pheap") by Knoxville Police Officer Dylan M. Williams ("Officer Williams"), Plaintiff Sophia Pheap, decedent's sister and the administratrix and personal representative of decedent's estate, initiated this action alleging, *inter alia*, a claim for excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 and state law claims for negligence and battery against Officer Williams. The case was tried before a jury from September 12, 2023 through September 14, 2023. On September 14, 2023, the jury returned a verdict in favor of Officer Williams on Plaintiff's claims for excessive force and battery [Doc. 211] and the Court granted Defendant's motion for judgment as a matter of law as to Plaintiff's negligence claim [*See* Doc. 218]. Plaintiff now moves for a new trial pursuant to Fed.R.Civ.P. 59(a).

1

## II. ANALYSIS

After a jury trial, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed.R.Civ.P. 59(a)(1)(A). The Sixth Circuit has interpreted this provision "to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias. *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996) (citations omitted). To succeed on a motion for a new trial, the moving party "must overcome the substantial deference owed a jury verdict." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007). Thus, a motion for a new trial should be denied "if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 525 (6th Cir. 1994) (citations omitted).

Here, Plaintiff asserts that a new trial is warranted pursuant to Rule 59, because "the Court committed a series of prejudicial errors of law that were so sufficiently serious that they tainted the deliberation process and affected the result of the trial" [Doc. 220, ¶ 2]. Specifically, Plaintiff lists the following five instances in which the Court allegedly erred during trial:

> (a) the improper introduction of irrelevant, substantially prejudicial, and inflammatory evidence by Dr. Geoffrey Thor Desmoulin ("Dr. Desmoulin") concerning Mr. Pheap's use of cocaine that inevitably tainted the jury verdict and the insufficiency of the Court's limiting instruction to the jury not to consider same;
>
> (b) the improper and prejudicial admission of inflammatory evidence of an old KPD training video showing Officer Williams being tased and suffering neuro-muscular incapacitation ("NMI"), notwithstanding the absence of evidence that Williams even suffered NMI in this case;
>
> (c) improperly allowing Officer Williams's expert, Dr. Desmoulin, to use a computer-generated re-enactment animated video that was not timely disclosed to

Plaintiff's counsel and prejudicial, inflammatory, cumulative, and confusing to the jury;

(d) the Court's improper refusal to allow Plaintiff to utilize actual Taser components as demonstrative aids to demonstrate, among other proofs, that the spent Taser was not a danger to Officer Williams at the moment he shot and killed Mr. Pheap; [and]

(e) the failure to strike a law-enforcement biased juror for cause, resulting in her being impaneled and thus, infecting and otherwise tainting the jury's deliberations

[Doc. 220, ¶ 4]. Additionally, Plaintiff alleges that "the verdict is against the great weight of the evidence" [*Id*. at ¶ 4(f)]. Each of the foregoing grounds for a new trial are addressed in turn.

### A. Testimony regarding Pheap's Cocaine Use

Prior to voir dire, the Court prohibited any mention of Mr. Pheap's criminal history or drug use and, during the trial, limited the testimony of an eyewitness who would have otherwise testified that she saw Mr. Pheap drop a bag of drugs on the ground while running from Officer Williams. Nonetheless, Officer Williams's expert witness, Dr. Desmoulin, testified during cross-examination that Mr. Pheap was "high on cocaine" [Doc. 229, pg. 79]. The Court immediately sent the jury out and reiterated the prior ruling that any evidence suggesting that Mr. Pheap had cocaine in his system was not relevant [*Id*.]. After calling the jury back in, the Court gave the following instruction:

> Ladies and gentlemen, at the start of this case you all will recall that there are certain items of testimony that, that I'll instruct you to accept as fact like stipulations; and then there's other parts of testimony that if I ask you to disregard it, you are to follow my direction and disregard it, okay. You just heard some testimony about cocaine, and I'm instructing you to disregard that testimony, okay, and put that out of your mind and focus on -- that's not going to be a part of this case, and you shouldn't give it any weight or any consideration, okay.

[*Id*. at pgs. 81–82]. Additionally, at the conclusion of the trial, the Court instructed the jury to follow the instructions given before and during the trial and reiterated that any testimony that had

3

been excluded or stricken or that the jury had been instructed to disregard was not evidence and could not be considered.

Despite the foregoing instructions, Plaintiff asserts that Dr. Desmoulin's testimony about Mr. Pheap being "high on cocaine" was so inflammatory that it tainted the jury's verdict [Doc. 221, pg. 7]. Plaintiff contends that, despite the Court's limiting instruction, the testimony had a prejudicial impact on the jury's deliberation and verdict and, as a result, a new trial is necessary to prevent manifest injustice [*Id*. at pg. 8]. Officer Williams, on the other hand, takes the position that any potential prejudice was cured by the Court's proper instructions [Doc. 233, pg. 10]. It is beyond dispute that Dr. Desmoulin's testimony that Mr. Pheap was "high on cocaine" was prejudicial to Plaintiff. As Plaintiff states, such testimony could only serve to "impugn Mr. Pheap's character and improperly give jurors the impression that he was a bad person" [Doc. 221, pg. 5]. However, such prejudice was cured by the instructions given by the Court both immediately after the prejudicial testimony and before deliberations.

"Although prejudice that affects the fairness of a proceeding can certainly be grounds for a new trial, when 'such prejudice is cured by instructions of the court, the motion for a new trial should be denied.'" *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1046–47 (6th Cir. 1996) (quoting *Clarksville–Montgomery County Sch. Sys. v. United States Gypsum Co.*, 925 F.2d 993, 1002 (6th Cir. 1991)). Moreover, the jury is presumed to follow such an instruction "unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be 'devastating' to the [other party][.]" *Greer v. Miller*, 483 U.S. 756, 767 (1987) (citations omitted). Here, there is no apparent reason to believe that the jury could not follow the Court's instructions and, although Plaintiff now claims that the Court's limiting instructions were "given in haste with little clarity and precision," Plaintiff's counsel did not challenge the sufficiency of the instructions at trial.

4

### B. KPD Training Video

Next, Plaintiff contends that the Court erred by admitting into evidence a training video which showed Officer Williams being tased and experiencing neuromuscular incapacitation ("NMI") [Doc. 221, pg. 8]. Plaintiff asserts that the training video was not admitted for any proper purpose because it was undisputed that Officer Williams never experienced NMI during the incident at issue with Mr. Pheap [*Id.* at pg. 9]. To the extent the video had any probative value, Plaintiff asserts that it was substantially outweighed by the danger of unfair prejudice [*Id.* at pg. 10]. Officer Williams, however, contends that the video was directly relevant to the "central issue" of whether Officer Williams faced an imminent threat of serious harm in the moments directly preceding the use of deadly force [Doc. 233, pg. 14].

"The district court has broad discretion to determine questions of admissibility; an evidentiary ruling is not to be lightly overturned." *Cummins v. BIC USA, Inc.*, 727 F.3d 506, 510 (6th Cir. 2013). Here, the Court admitted the training video over Plaintiff's objections, which were based on relevance and undue prejudice. As Officer Williams points out, one of the main issues for the jury to determine at trial was whether Mr. Pheap "presented an immediate danger to officers or others." *Hicks v. Scott*, 958 F.3d 421, 435 (6th Cir. 2020). In support of his defense, Officer Williams presented evidence showing that the taser deployed during a struggle with Mr. Pheap, at least one prong contacted his body, and Mr. Pheap was facing Officer Williams with the taser in his hand prior to the fatal shots. Officer Williams testified that he feared that Mr. Pheap would use the taser to incapacitate him and grab his service weapon. Plaintiff's response to discredit this theory was that the spent taser could not be a danger to Officer Williams because NMI could not be achieved. To support his theory, Officer Williams offered the training video which he testified showed him experiencing NMI with only one probe attached to his body and with the taser being applied directly to his body in "drive stun" mode.

5

Based on the foregoing, the training video was unquestionably relevant, *i.e.*, it had a tendency to make Officer Williams's version of the events more probable than it would be without the video. *See* Fed.R.Evid. 401. Additionally, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The training video went to the heart of the case—that is, whether Officer Williams reasonably feared for his life prior to fatally shooting Mr. Pheap. To the extent Plaintiff argues that it was sufficient for Officer Williams to testify as to his fear without using the "inflammatory training video" [Doc. 221, pg. 9], Plaintiff challenged the reasonableness of that fear and thereby opened the door for evidence to support it. Accordingly, the training video was properly admitted.

### C. Computer-Generated Reenactment Video

Plaintiff also asserts that the Court improperly allowed Dr. Desmoulin to use a computer-generated re-enactment animation video (the "video model") as a demonstrative aid during his testimony [Doc. 221, pg. 10]. The video model, which was approximately 19 seconds long, depicted Dr. Desmoulin's opinions regarding the approximate positions of Mr. Pheap and Officer Williams when the taser deployed and at the time of the shooting. Plaintiff asserts, as she did prior to trial and during trial, that the video model should not have been shown to the jury because it presented cumulative evidence, prejudiced her, and confused the jury [Doc. 221, pg. 14].

First, the video model was not admitted as evidence. Rather, as a demonstrative aid, Dr. Desmoulin merely used the video model to help the jury understand his testimony regarding his opinion of the events. Moreover, Dr. Desmoulin testified as to the methodology behind the video model; that is, he used Officer Williams's statements as a hypothesis and then tested against it using the reconstruction [Doc. 229, pg. 67]. In doing so, he testified that the video model was consistent with the evidence he received and tested [*Id*. at pg. 68]. Although the video model depicted events that contradicted Plaintiff's theory, it helped to explain Dr. Desmoulin's opinion

6

that Officer Williams's version of the events was supported by the evidence. Thus, it was no more cumulative than Dr. Desmoulin's testimony alone.

To the extent Plaintiff claims that the video model was unduly prejudicial or confusing to the jury, the Court cured those concerns by instructing the jury that the video model, or any other demonstrative aid used during trial, was not evidence or proof of any facts but simply used for convenience and to help explain the facts of the case. The Court also instructed the jury before allowing them to view the video model that it was being shown as a demonstrative aid and should only be considered to aid in understanding Dr. Desmoulin's testimony [Doc. 229, pg. 67]. As stated above, the presumption is that the jury followed the Court's instructions. *See Greer*, 483 U.S. at 767. And, as to the video model, there is no reason to believe that the jury was unable to do so.

D.  **Taser Components as Demonstrative Aids**

Plaintiff also takes issue with the fact that the Court allowed Dr. Desmoulin to use the video model as a demonstrative aid but did not allow her to show the jury the actual taser components as demonstrative aids [Doc. 221]. As an initial matter, the admission of the video model is unrelated to the exclusion of the taser components. To be sure, however, the Court excluded the taser components due to Plaintiff's failure to identify the authenticating witness, Sean Kerstetter, in her pretrial disclosures, which were due on July 31, 2023 [*See* Doc. 86, pg. 4]. The Court admonished both parties that a failure to comply with the required pretrial disclosures would "likely result in the exclusion of [the] items from use at trial in that party's case-in-chief" [*Id.*]. Moreover, the Federal Rules provide that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). Plaintiff failed to show that the failure to identify

7

Mr. Kerstetter in her pretrial disclosures or supplemental pretrial disclosures was substantially justified or harmless. Thus, the exclusion of Mr. Kerstetter was warranted and, without anyone to authenticate the taser components, the exclusion of those items was also warranted.

### E. Law Enforcement Biased Juror

Next, Plaintiff asserts that she is entitled to a new trial due to the Court's denial of her motion to excuse Juror No. 1 [Doc. 221, pg. 16]. During voir dire, Plaintiff's counsel asked who all had relatives who were police officers, and, among others, Juror No. 1 raised her hand [Doc. 230, pg. 44]. She stated that her brother-in-law was a retired sergeant for the Kingsport, Tennessee Police Department, where he served for 31 years [*Id*. at pg. 45]. When asked if she could set aside her feelings and emotions, she stated that she would try her best [*Id*. at pg. 47]. Plaintiff moved to strike Juror No. 1 for cause "on the basis that her decision may be based on her emotional feelings and her personal history" [*Id*. at pg. 55]. The Court denied Plaintiff's motion, finding the particular juror to be credible when expressing to the Court that she could set aside her personal beliefs [*Id*. at pgs. 55, 56].

Plaintiff recognizes that "the mere existence of personal or family contacts to someone in a profession or circumstance similar to that of one of the parties, without more, is not a basis to strike for cause" [Doc. 221, pg. 17]. However, with respect to Juror No. 1, Plaintiff asserts that the juror "informed the Court that she might have sympathy or concern for Officer Williams because of her husband" and, as a result, "her participation and circumstances may have had a biased and adverse effect on other jurors, infecting the deliberations and resulting in a tainted verdict" [*Id*. at pg. 18]. However, Plaintiff misstates the relationship between Juror No. 1 and her police-officer relative. To be sure, Juror No. 1 stated that her brother-in-law, not her husband, was a police officer for 31 years. Nonetheless, Juror No. 1 sufficiently assured the Court of her ability to be impartial, and the Court properly relied on that assurance in denying Plaintiff's motion. *See*

8

*Hughes v. United States*, 258 F.3d 453, 459–60 (6th Cir. 2001) ("A district court may rely upon juror assurances of impartiality in deciding whether a [party] has satisfied [its] burden of proving actual prejudice."). Accordingly, Plaintiff is not entitled to a new trial due to the denial of her motion to strike Juror No. 1.

### F. Verdict Compared to the Weight of the Evidence

Finally, Plaintiff asserts that the jury's verdict was against the great weight of the evidence presented at trial [Doc. 221, pg. 18]. "[A] new trial is warranted when a jury has reached a seriously erroneous result as evidenced by . . . the verdict being against the weight of the evidence." *Strickland v. Owens Corning*, 142 F.3d 353, 357 (6th Cir. 1998) (citation omitted). Specifically, the Sixth Circuit has held as follows:

> [I]n ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, the trial court must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence.

*Id.* (quoting *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991)). Plaintiff asserts that "the great weight of the evidence clearly supported the fact that Mr. Pheap had no weapon that was a threat to Williams, that he was fleeing when Williams fired, and that at the moment Williams shot and killed him, Pheap posed no serious or imminent threat to Williams's safety" [Doc. 221, pg. 21].

Upon consideration of the evidence presented at trial, however, the verdict in favor of Officer Williams is not against the clear weight of the evidence. Eyewitness testimony and Officer Williams's testimony, to the extent the jury considered it to be credible, established that Mr. Pheap and Officer Williams struggled over control of Officer Williams's taser and that the taser deployed during or as a result of the struggle. Testimony and photographic evidence were also introduced showing that one of the taser probes came into contact with Officer Williams's body. Officer

9

Williams also testified that he felt electricity in his arm and neck after the taser was deployed. Finally, Officer Williams introduced video evidence showing that, even with only one probe touching him, Mr. Pheap could have physically incapacitated him if he attempted to use the taser as a stun gun. Although Plaintiff asserts that the evidence proves Mr. Pheap was shot in the back, Officer Williams presented sufficient evidence showing that Mr. Pheap was shot in the left side of his back, which is consistent with his testimony that Mr. Pheap was holding the taser with his left hand and pointing it at Officer Williams at the time he fired the fatal shots.

Based on the foregoing, the Court cannot find that the jury's verdict was against the great weight of the evidence. Due to the conflicting theories of what transpired off-camera prior to the shooting, the outcome of the trial necessarily hinged on who the jury believed to be more credible. Whether the Court would have reached a different conclusion, however, is irrelevant. The jury's verdict must be upheld so long as it "is one which could reasonably have been reached" and a verdict is not unreasonable "simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *Strickland*, 142 F.3d at 357 (citation omitted). Based on the evidence presented at trial, the jury's verdict is one which could reasonably have been reached.

### III. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for a New Trial [Doc. 220] is **DENIED**. Additionally, considering the sufficiency of the record and the parties' briefs, the Court determined that oral argument would not be beneficial. Thus, Officer Williams's Objection to Plaintiff's request for oral argument [Doc. 237] is **MOOT**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge